**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MEDCOR, INC.**, an Illinois Corporation, | |
| Plaintiff, | Civil Case No.: 1:21-cv-02164 |
| v. | Honorable Manish S. Shah |
| **CHRISTOPHER GARCIA**, a California resident; **AMANDA BROWN,** a Texas resident; **DR. RAVI PATEL,** a Florida resident; and **MEDWAY HEALTH, INC.,** a California Corporation; | **MEDCOR, INC.'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY, A PRESERVATION ORDER, AND A PROTECTIVE ORDER TO DEFENDANT CHRISTOPHER GARCIA, DEFENDANT AMANDA BROWN, DEFENDANT DR. RAVI PATEL AND DEFENDANT MEDWAY HEALTH, INC.** |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY, A PRESERVATION ORDER, AND A PROTECTIVE ORDER**

**I.      INTRODUCTION**

Plaintiff Medcor, Inc. ("Medcor"), through its attorneys, respectfully submits this Memorandum in Support of Plaintiff's Emergency Motion for Expedited Discovery, Preservation Order, and Protective Order.  Pursuant to this Motion, Plaintiff requests the Court to enter an Order permitting Plaintiff to take limited expedited discovery to ascertain the extent of Defendant Christopher Garcia's, Defendant Amanda Brown's, Defendant Ravi Patel's, and Defendant Medway, Inc.'s (collectively, "Defendants") access to and misappropriation of Plaintiff's proprietary information and trade secrets.  Moreover, Defendant Garcia, Defendant Brown, and Defendant Patel are in continuous breach of their contractual obligations to Medcor.  Defendants have used and continue to use Medcor's confidential and proprietary information and trade secrets in a concerted effort to tortiously divert business away from Medcor to unjustly enrich themselves.

1

Specifically, Medcor seeks leave to take the limited discovery identified below, which is designed to elicit factual information related to Medcor's claims, to preserve evidence of the misappropriation, and in order to assess the extent of ongoing and irreparable harm to Medcor resulting from Defendants' unlawful actions. Medcor requests entry of a Protective Order pursuant to Fed. R. Civ. P. 26(c)(1)(G) to protect confidential business and trade secret information.

### A.     Inspection of Computers

Medcor respectfully requests the Court to grant an Order requiring Defendants to submit for a forensic examination all computers, smartphones, hard drives, and external storage devices such as CDs, DVDs, and thumb or flash drives in their possession, custody or control, that are or have been used in connection with Defendants' solicitation and delivery of COVID services for or on behalf of Defendant Medway or in competition with Medcor within fourteen (14) days of the entry of an Order granting Medcor's Motion. This request includes Medcor's company laptop computer and smartphone that Defendant Brown took with her after her employment by Medcor was terminated. The inspection shall be conducted by a computer forensic consultant. Medcor will bear the expenses associated with the forensic examination, without waiver of their right to seek reimbursement of their expenses as part of this lawsuit.

### B.     Interrogatories and Document Production Requests

Medcor moves the Court to order Defendants (a) to respond to Plaintiff's First Set of Interrogatories and (b) to respond to and produce documents and things responsive to Plaintiff's First Set of Request for Production of Documents and Things, within fourteen (14) days of service. Plaintiff's First Set of Interrogatories and Plaintiff's First Set of Requests for Production of Documents are attached hereto as Exhibit A and B, respectively.

      **C.**      **Preservation Order**

Lastly, Medcor requests the Court to enter a Preservation Order to preserve evidence. By this Order, the Defendants shall be restrained from destroying, altering, or deleting any and all evidence pertaining to this matter, including without limitation all communications, hard copy documents, and electronically stored information or computer records in their possession, custody, or control.

As detailed below, Medcor has good cause for seeking the limited discovery outlined above. Ordering expedited discovery will not unduly prejudice Defendants, will help ensure that no potentially relevant evidence is destroyed, and will help to mitigate the injury suffered by Plaintiff because of the misappropriation of its proprietary information.

**II.**      **BACKGROUND**

Medcor provides on-site workplace healthcare services to clients across the United States and in Canada to improve healthcare outcomes and access to medical care while reducing costs. Medcor uses highly trained professional staff, evidence-based medicine, proprietary protocols, and state-of-the-art systems to achieve sustained, positive results. Verified Complaint at ¶ 2. A large component of Medcor's business is COVID-19 related health security screening, testing, and worksite COVID-19 exposure management services (collectively referred to as "COVID Services") offered to longstanding clients in the entertainment and sports industries who have been Medcor clients for decades. *Id.*

Medcor has developed the expertise to work in demanding COVID Services environments and has earned the respect and confidence of major players in the industry for its consistently reliable and high-quality services. Such expertise and know-how include industry and client-specific knowledge of how to implement intrusive COVID-19 screening and testing services in a way that does not interfere with production. This expertise and know-how, together

with, at the least, (a) Medcor's telephone triage algorithms, Medcor's AFKAM software, and Medcor's telephone triage methods, processes and systems; (b) Medcor's occupational health clinic Patient Care Guidelines, Medcor's processes and systems to implement and execute its Patient Care Guidelines, Medcor's Medfiles software, and Medcor's Medfiles Wizard algorithms; (c) Login and password information for Medcor's information systems; (d) Medcor's business planning and pricing methodologies; (e) Medcor's internal non-public financial information; (f) Information from clients that is considered a trade secret by the client; (g) Client and customer lists, the identity of key client contact persons responsible for purchasing the types of services provided by Medcor, and Medcor's pricing methods (including, but not limited to, the COVID Services key client list and execution methods); (h) Specialized strategies, practices and procedures for obtaining and maintaining clients, including both proven and planned marketing, sales and ongoing service strategies and programs; (i) Medcor's Quality Assurance methods and results; (j) Medcor's integration between customers' claims processes and Medcor's clinic and triage processes, including operational solutions relevant to individual clients; (k) Medcor's clinic operations policies, procedures and processes.; (l) Medcor's telephone triage policies, procedures and processes; (m) The processes and systems of Medcor's clients, including claims processing and handling, client policies and procedures, the systems and methods clients utilize to interface with Medcor's services; (n) All personal information about individuals utilizing Medcor's services; (o) Information from clients that is considered proprietary information by the client; and (p) Other information determined by Medcor to be confidential (all of the above, including said expertise and know-how, are collectively referred to herein as "Protected Information") are important and valuable trade secrets of Medcor. *Id.* at ¶ 25.

Medcor closely guards its Protected Information, and takes specific measures to restrict access to and preserve the confidentiality of this information, including, but not limited to, requiring employees to sign agreements containing terms and covenants designed to maintain confidentiality and requiring the return of Medcor's property upon resignation or termination. *Id.* at ¶ 28. Defendant Garcia, Defendant Brown, and Defendant Patel each signed such agreements. *Id.* at ¶¶ 33, 41–48, 51–52. The agreements signed by Defendant Garcia and Defendant Brown contain non-solicitation and non-compete provisions, among others, restricting the use of Medcor's Protected Information. *Id.* at ¶ 41. The agreements signed by Defendant Patel contain confidentiality and non-disclosure provisions, among others, restricting the use of Medcor's Protected Information. *Id.* at ¶¶ 54–55.

As detailed in the Verified Complaint, the process for preparing and selling Medcor's services, including its COVID Services, was developed over time at great effort and expense, is not generally known, is proprietary, and is of substantial commercial value. Medcor has spent many years and significant expenditures developing and refining its Protected Information and carefully limits access to its Protected Information to certain employees and requires such employees to maintain the confidentiality of the Protected Information. *Id.* at ¶¶ 24–31. Indeed, Medcor sells customized services to its clients, including its COVID Services. By way of example and without limitation, Medcor's clients in the sports and entertainment industries each have different and unique needs, depending on their personnel, event locations, production scale and other unique characteristics that vary from client to client. No two customers have the same needs, which is why the Protected Information, including Medcor's customer lists and other confidential information, are so valuable. Any outsider would find himself at an extreme disadvantage if he or she were to attempt to solicit and divert Medcor's business. On the other hand, a former Medcor

employee would know exactly how to effectively solicit and provide services, including COVID Services, to Medcor customers. This is why Defendant Garcia, a former Medcor director, formed Defendant Medway to compete with Medcor, mere days after he was terminated from Medcor.

Defendant Garcia was a director level employee of Medcor from October 1, 2019 until December 9, 2020. *Id*. at ¶ 18. In his capacity as a director, Defendant Garcia received Protected Information, including business planning, pricing, and the identities of key client contacts within Medcor's entertainment and sports client list. *Id*. at ¶ 38. From approximately June 2020 to December 9, 2020, Defendant Brown was employed by Medcor and reported directly to Defendant Garcia. *Id.* During Defendant Garcia's tenure at Medcor, he provided Defendant Brown access to the Protected Information. *Id.* On December 9, 2020, after Defendant Garcia's termination from Medcor, Defendant Brown was promoted into Defendant Garcia's role as Director of Operations and was provided first-hand access to the Protected Information. *Id.*

Medcor terminated Defendant Garcia on December 9, 2020. *Id*. at ¶32. The domain name for Defendant Medway's website, <medwayhealth.org>, was registered on December 12, 2020. *Id*. Articles of Incorporation for Defendant Medway were filed with the California Secretary of State on January 13, 2021. *Id*. The Articles show Defendant Garcia as the Individual Agent for Defendant Medway. *Id*. After Defendant Garcia was terminated from Medcor, and while Defendant Brown and Defendant Patel continued to work for Medcor, Defendant Brown and Defendant Patel used their access to the Protected Information to divert Medcor business to Defendant Garcia and Defendant Medway. *Id*. at ¶¶ 58–79.

Defendant Brown and Defendant Garcia were both obligated to return their Medcor equipment and other materials post-termination pursuant to their employment agreements. *Id*. at ¶ 43. Defendant Brown has thus far not returned the Medcor equipment. *Id*. In connection with

Medcor's ongoing inspection of Defendant Garcia's Medcor computer, Medcor has learned that Defendant Garcia's Medcor computer appears to have been little used during Defendant Garcia's employment with Medcor and, therefore, Medcor strongly suspects that Defendant Garcia utilized another device to conduct Medcor business. Such other devices likely were used to access Protected Information, and Protected Information may be saved thereon.

Defendants have and are continuing to improperly use the Protected Information to develop, through Defendant Medway, a competing healthcare services company offering COVID Services to Medcor customers.

Medcor requests the Court to enter an Order permitting Plaintiff to take limited expedited discovery. As outlined above, the requested discovery is limited in scope and will not unduly prejudice Defendants. Further, the requested discovery will help to ensure no potentially relevant evidence is destroyed, and will mitigate the injury suffered by Medcor as a result of the misappropriation of its proprietary information and the non-corporate Defendants' breaches of their respective contracts with Medcor.

### III.     ARGUMENT AND AUTHORITY

Courts are empowered to authorize expedited discovery, including expediting the commencement of the discovery period, upon a showing of good cause. Fed. R. Civ. P. 26(d), 33(a), & 34(b); *see also Hard Drive Prods., Inc. v. Doe*, 283 F.R.D. 409, 410 (N.D. Ill. 2012). Good cause is found when the need for expedited discovery outweighs any prejudice to the Defendants in consideration of the administration of justice. *Ibarra v. City of Chi.*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011). Expedited discovery is frequently granted in cases concerning trade secrets and trademark infringement between two competitors. *See, e.g., Johnson & Johnson v. Advanced Inventory Management*, Case No. 20-cv-3471, (N.D. Ill. June 16, 2020). In this

Circuit, District courts "evaluate a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Bicycle Peddler, LLC v. Does 1-12*, 295 F.R.D. 274, 277 (N.D. Ill. 2013). "In applying the 'reasonableness' standard, factors a Court may consider include (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request is made." *Ibarra*, 816 F. Supp. 2d at 554.

Expedited discovery and a preservation order are particularly appropriate when, as here, the plaintiff seeks immediate relief to cure irreparable injury and the requests are properly tailored. *See CampaignZERO, Inc. v. StayWoke Inc.*, 2020 U.S. Dist. LEXIS 228050, at *6 (N.D. Ill. Dec. 4, 2020) (The narrowed discovery . . . will not impose a significant burden on Defendants); *Diversified Servs. v. Morrison*, 2020 U.S. Dist. LEXIS 142962, at *11 (C.D. Ill. April 2, 2020) ("The fact that the Preliminary Injunction is pending and the purpose for requesting the expedited discovery weigh heavily in favor of allowing the request."); *see also Shutterfly v. Foreverarts*, No. CR 12-3671, at *3 (N.D. Cal. July 13, 2012) (ordering expedited discovery and issuing preservation order where ex-employees allegedly wrongfully copied trade secrets from plaintiff's computer and used the information to establish a competitive website); *Ellsworth Associates, Inc. v. U.S.*, 917 F. Supp. 841, 844 (D.D.C. 1996) (granting expedited discovery for narrowly tailored discovery requests).

The information Plaintiff seeks is within the possession and control of Defendants and readily accessible to them. The requested discovery is not overly broad or unduly burdensome. Indeed, Plaintiffs have narrowly tailored their discovery requests to only four interrogatories and

seven document production requests. The proposed discovery is limited to key facts such as the scope of materials misappropriated from Plaintiffs; the persons to whom the trade secrets and proprietary information have been disseminated; and the extent to which the trade secrets and proprietary information are being used in connection with Defendants' business. *See* Plaintiffs' Exhibits A and B, attached.

Furthermore, to ensure that all relevant evidence is preserved, Plaintiffs seek a preservation order requiring Defendants not to destroy any of the evidence pertaining to this matter. The preservation order would not burden Defendants and is appropriate under the circumstances—even without a court order, parties to civil litigation may not destroy evidence. *See, e.g., Lekkas v. Mitsubishi Motors Corp.*, 2002 WL 31163722, at *3 (N.D. Ill. Sept. 26, 2002); *see also Shutterfly*, No. CR 12-3671, at*3 ("Simply prohibiting the destruction of evidence will not burden defendants.").

## IV. CONCLUSION

For the forgoing reasons, Medcor respectfully request that the Court grant its Motion for Expedited Discovery, a Preservation Order, and a Protective Order. A Proposed Order is submitted herewith for the Court's convenience.

Dated: May 5, 2021                                    Respectfully submitted,

                                                          By:   /s/Dalton K. Hughes
                                                                  William H. Frankel
                                                                  wfrankel@brinksgilson.com
                                                                  Virginia W. Marino
                                                                  vmarino@brinksgilson.com
                                                                  Dalton K. Hughes
                                                                  dhughes@brinksgilson.com
                                                                  **BRINKS GILSON & LIONE**
                                                                  NBC Tower, Suite 3600
                                                                  455 N. Cityfront Plaza Drive
                                                                  Chicago, IL 60611

Telephone: (312) 321-4200

*Attorneys for Plaintiff
MEDCOR, Inc.*

Anthony W. Mattivi
Anthony.Mattivi@medcor.com
MEDCOR, Inc.
4805 Prime Parkway
P.O. Box 550
McHenry, IL 60050
Telephone: (815) 363-9500

*Of Counsel for Plaintiff
MEDCOR, Inc.*

10