IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MEDCOR, INC.**, an Illinois Corporation,<br><br>Plaintiff,<br><br>v.<br><br>**CHRISTOPHER GARCIA**, a California resident; **AMANDA BROWN,** a Texas resident; **DR. RAVI PATEL,** a Florida resident; and **MEDWAY HEALTH, INC.,** a California Corporation;<br><br>Defendants. | Civil Case No.: 1:21-cv-02164<br><br>Hon. Manish S. Shah |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff MEDCOR, INC. ("Medcor"), by its undersigned attorneys, submits its Memorandum of Law in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction against CHRISTOPHER GARCIA ("Garcia"), AMANDA BROWN ("Brown"), DR. RAVI PATEL ("Patel") (Garcia, Brown, and Patel collectively referred to as the "Individual Defendants"), and MEDWAY HEALTH, INC. ("Medway") (the Individual Defendants and Medway collectively referred to as the "Defendants"). The facts alleged in this memorandum are set forth in Plaintiff's Verified Complaint (Doc. 1) and declared by Eric Robinson, Executive Vice President of Operations for Medcor, attached as Exhibit A. Medcor alleges and states as follows:

**I.      FACTUAL BACKGROUND**

This case concerns Defendants' treachery in setting up a competing medical services business during and subsequent to their association with Medcor based on Medcor confidential trade secrets and in violation of their contractual and other obligations to Medcor. Defendant

Garcia and Defendant Brown were employees of Medcor, directing the operation of Medcor's COVID-19 related health security screening, testing, and worksite COVID-19 exposure management services ("COVID Services"). Robinson Declaration at ¶ 18. Defendant Garcia and Defendant Brown were entrusted with Medcor's resources and confidential trade secret information (detailed and defined as the "Protected Information" in Medcor's Verified Complaint, Doc. 1 ¶ 25), and conspired with Defendant Patel to use the Protected Information to usurp clients and contracts from Medcor. Defendant Garcia accomplished this by forming a competitor company—Defendant Medway—immediately after his termination from Medcor, and soliciting Medcor clients using the Protected Information, despite his agreements with Medcor prohibiting such actions. Robinson Declaration at ¶¶ 33–45. Defendant Brown and Defendant Patel, while employed by and under contract with Medcor, respectively, diverted Medcor's current and prospective customers to Defendant Garcia and Defendant Medway. *Id.*

Medcor relies on a wealth of information it has collected over decades to provide crucially important COVID Services during the global pandemic. Medcor clients and prospective clients rely on and trust Medcor's expertise in the onsite workplace healthcare services industry and the sterling reputation that Medcor has built for itself. *Id.* at ¶ 47. This expertise, coupled with the Protected Information, is the lifeblood of Medcor's business. As such, Medcor takes substantial steps to limit access to the Protected Information and otherwise protect against inappropriate use or disclosure. *Id.* at ¶ 15–16.

After his termination from Medcor, Defendant Garcia used Medcor's Protected Information in the solicitation and servicing of Medcor clients, including, but not limited to, Medcor methods, pricing information, and customer lists. *Id.* at ¶ 40–42. Defendant Brown, then an employee at Medcor, likewise began soliciting and referring Medcor clients and

2

prospective clients to Defendant Garcia and Defendant Medway. *Id.* These actions are in direct violation of Defendant Garcia's and Defendant Brown's employment contracts, which stated that they could not use or disclose the Protected Information, solicit Medcor's customers, or use Protected Information for their benefit for a period of six months. *Id.* at ¶ 23–28. Defendant Garcia, Defendant Brown, and Defendant Patel breached their respective contractual agreements with Medcor by soliciting and diverting COVID Services work from at least three Medcor clients to Defendant Medway by using the Protected Information. *Id.* Such a departure of client work is very rare for Medcor, and Defendants' actions have impaired and threatened Medcor's long-standing and strong relationships with key customers. *Id.* at ¶¶ 7–9, 59.

Defendants' ongoing tortious activities are causing Medcor immediate, irreparable harm by impairing Medcor's goodwill and reputation with its clients, destroying Medcor's established customer relationships that it has invested years to build, usurping Medcor's competitive advantage in the industry, and threatening the continued misappropriation of Medcor's Protected Information. *Id.* at ¶¶ 11, 53–59. Injunctive relief is necessary.

## II. ARGUMENT

### A. Legal Standard

A temporary restraining order and preliminary injunction should be granted when the moving party demonstrates that "(1) without preliminary relief, it will suffer irreparable harm before final resolution of its claims; (2) legal remedies are inadequate; and (3) its claim has some likelihood of success on the merits." *Eli Lilly and Co. v. Aria Foods, Inc.*, 893 F.3d 375, 381 (7th Cir. 2018). If the moving party demonstrates these factors, then the court balances the harms to the moving party, non-moving parties, affected third parties, and considers the public interest. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). The Court takes a

sliding scale approach in this Circuit: the greater the movant's likelihood of success, the less strong a showing the movant must make. *Epic Fresh Produce, LLC v. Olympic Wholesale Produce, Inc.*, 2017 U.S. Dist. LEXIS 201904, at *7 (N.D. Ill. Dec. 7, 2017). Here, Medcor establishes all required elements and is entitled to a preliminary injunction.

> B. **Medcor Will Suffer Serious and Irreparable Harm Without Injunctive Relief and Does Not Have an Adequate Remedy at Law**

Medcor will suffer irreparable harm without injunctive relief, one for which there is no adequate remedy at law. The loss of opportunities through contractual breaches to provide services to paying customers, along with opportunities to retain, maintain, and develop relationships with existing and potential customers, constitutes irreparable harm. *See Duct-o-wire co. v. United States Crane*, 31 F.3d 506, 509–10 (7th Cir. 1994). The loss of customers is understood to be unascertainable. *See, e.g.*, *Scheffel & Co., P.C. v. Fessler*, 356 Ill. App. 3d 308, 314 (5th Dist. 2005) ("[T]he resulting potential loss of future business[] is incapable of adequate computation."). Notably, Defendant Garcia's and Defendant Brown's agreements with Medcor indicate that the parties specifically contemplated injunctive relief to address breaches relating to the restrictive covenants. Robinson Declaration at ¶¶ 22–27.

Moreover, in cases of trade secret misappropriation, there is a presumption of irreparable harm. *See Aon Risk Servs. Cos. v. Alliant Ins. Servs.*, 415 F. Supp. 3d 843, 851 (N.D. Ill. 2019). This is because "it would be essentially impossible to determine the costs [a competitor] unjustly avoided by using these trade secrets, or the damage to [a trade secret owner's] sales that could be caused by allowing [a former employee] to use its own secrets against it." *Vendavo*, 397 F. Supp. 3d at 1144. This Circuit has recognized the threat of losing customers through trade secret misappropriation and contractual breaches as sufficient grounds for an injunction, and that customers solicited under such inappropriate circumstances are rarely, if ever, regained. *See,*

4

*e.g.*, *Merrill Lynch, Pierce, Fenner & Smith v. Salvano*, 999 F.2d 211, 215 (7th Cir. 1993); *Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc.*, 420 F. Supp. 2d 866, 872 (N.D. Ill. 2006) (loss of "competitive position" and "continuity of business relationships" adequate for showing irreparable harm). The loss of business that Defendants have caused and threaten to cause and the profits lost with such business are unquantifiable at this time. *Mickey's Linen v. Fischer*, 2017 U.S. Dist. LEXIS 145513, at *61 (N.D. Ill. Sept. 8, 2017) ("[T]he difficulty of pinning down what business has been or will be lost that makes an injury irreparable"); Robinson Declaration at ¶¶ 8–10, 59.

Medcor has suffered intangible damages as well, including loss of goodwill and competitive position, as the result of Defendants' tortious actions. *See Brown & Brown, Inc. v. Ali,* 494 F. Supp. 2d 943, 955 (N.D. Ill. 2007) (citing *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 902 (7th Cir. 2001) ("The Seventh Circuit has held that "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill. . . ."")). Medcor has suffered irreparable injuries resulting from the infringement upon its name and trademarks. *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) ("[D]amage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy."); Robinson Declaration at ¶¶ 57–58. Medcor has no adequate remedy at law.

### C. Medcor is Substantially Likely to Prevail on the Merits

Medcor has a "better than negligible" chance of success on the merits for at least one claim for relief. *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018). Medcor is likely to succeed on all Counts under which it requests equitable relief in the Verified Complaint.

#### i. Breach of Contract Claims

5

Medcor is likely to succeed on its breach of contract claims. Breach of contract requires: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages or injury resulting from the breach. *Hess v. Bresney*, 784 F.3d 1154, 1158 (7th Cir. 2015). Each factor is met here.

Defendant Garcia, Defendant Brown, and Defendant Patel voluntarily entered into agreements with restrictive covenants in exchange for valid consideration. *See* Exhibit A's Exhibits 1, 2, and 3. The contracts incorporate restrictions as to the use and disclosure of Medcor's trade secret, confidential or proprietary information, including but not limited to the Protected Information. Defendant Brown and Defendant Garcia also agreed to restrictive covenants, including agreements to refrain from utilizing Medcor proprietary information or trade secrets to solicit or induce any Medcor employee or customer, or prospective customer, and competing with Medcor for a period of 6 months post-termination, among other restrictions. Robinson Declaration at ¶¶ 23–28. Defendant Patel likewise agreed to restrictive covenants to refrain from interfering with Medcor's business relationship with its customer (the same Medcor customer to whom Defendant Patel was contracted to provide services), promoting himself or his business interests to Medcor's customer in lieu of Medcor, soliciting Medcor's customer to substitute his services for Medcor's services, or otherwise advancing his self-interests, both personal and business, to the detriment of Medcor. *Id.* at ¶ 22.

This District considers three factors in determining whether a restrictive covenant contains a reasonable restraint on an employee: (1) whether the restraint is greater than reasonably required to protect an employer's legitimate business interest; (2) whether it imposes undue hardship on the former employee; and (3) whether it poses an injury to the greater public.

*See U.S. Data Corp. v. RealSource, Inc.*, 910 F. Supp. 2d 1096, 1104 (N.D. Ill. 2012); *Reliable Fire Equipment Co. v. Arredondo*, 965 N.E.2d 393, 396-97 (Ill. 2012).

The first factor is based on the facts and circumstances of the contract and case. *See Traffic Tech, Inc. v. Kreiter*, 2015 U.S. Dist. LEXIS 169248, at *16 (N.D. Ill Dec. 18, 2015). Here, the covenants are narrowly tailored to benefit Medcor's legitimate business interests in its long-term customer relationships, goodwill, confidential information, trade secrets, and investment in its employees. *See id.* at *65. ("In considering the legitimacy of the employer's interest in levying the restriction, courts consider, among other factors, 'the near-permanence of customer relationships. . .'"); Robinson Declaration at ¶¶ 22–27. Medcor has a significant interest in its customer relationships and Protected Information. Robinson Declaration at ¶ 47. Medcor's early success in the COVID Services market was driven solely because of Medcor's existing knowledge of the onsite workplace healthcare services industry, goodwill with its customers, and knowledge of its customers' businesses to maintain and expand the services Medcor provides them. *Id.* at ¶¶ 12, 47. Medcor maintains a 98% retention rate for its customers as a result of its efforts, and has seen significant repeat business from its COVID Services customers. *Id.* at ¶ 7. Medcor also spends significant sums of money to research and develop methods and strategies to implement the COVID Services procedures and maintain its customer relationships. *Id.* at ¶¶ 8-9.

Second, the covenants impose no hardship on the Defendants. The agreements do not prohibit Defendant Garcia from working in the healthcare services field at large, but merely limit him from competing with Medcor, for a short and reasonable period of six months. *Id.* at ¶¶ 24–26. A restricted period of six months is not unreasonable in length or scope. Illinois courts have found that up to two years is a reasonable restriction period. *See Mickey's Linen*, 2017 U.S. Dist.

LEXIS, at *49. Notably, Defendant Garcia's non-compete covenant reasonably excludes business conducted in the State of California. Robinson Declaration at ¶ 26. None of the complained-of activities were conducted in California.

Defendant Garcia, Defendant Brown, and Defendant Patel cannot disclose Medcor's confidential and proprietary information, and Defendants Garcia and Brown cannot use such information to solicit Medcor employees or Medcor customers (either current or prospective), or to interfere with Medcor's business relationships. *Id.* at ¶¶ 22–27. After the restricted period, Defendant Garcia and Defendant Brown may compete with Medcor, provided they do not use or otherwise disclose Medcor's Protected Information to do so. *Id.*

Third, the contractual restriction does not harm the public. Protecting an employer's legitimate interest in its customer relationships and confidential information, where members of the public can be potential clients, benefits the public. Defendant Garcia, Defendant Brown, and Defendant Patel were not restricted from working in a chosen field. *Id.* This District has routinely held that short restrictions on related work through employment covenants are acceptable when the employee retains the right to work in a field. *See Traffic Tech*, 2015 U.S. Dist. LEXIS, at *66 (covenant not oppressively overbroad when defendant regularly had access to confidential client information, covenant allowed him to gain new business, and 18-months was a reasonable time restriction); *Mickey's Linen*, 2017 U.S. Dist. LEXIS, at *54 (covenant prohibiting former employee from soliciting customers with whom he formerly worked "meets all three reasonableness factors required under Illinois law").

### ii. Tortious Interference of Contract Claims

The elements of tortious interference with contract are: (1) the existence of a valid and enforceable contract; (2) the defendant's awareness of the contract; (3) the defendant's

intentional inducement of a breach of the contract; (4) a subsequent breach by a third party as a result of defendant's conduct; (5) damages. *Traffic Tech*, 2015 U.S. Dist. LEXIS, at *31.

Defendant Garcia knew of Defendant Brown's and Defendant Patel's restrictive covenants, and knowingly allowed and encouraged Defendant Brown and Defendant Patel to use Protected Information to solicit Medcor customers and divert business away from Medcor in breach of their agreements. Robinson Declaration at ¶¶ 34–37, 46, 50, 54. Defendant Garcia allowed and encouraged Defendant Brown and Defendant Patel to divert business to Defendant Medway from Medcor. *Id.* As a result, Medcor suffered and continues to suffer damages, and Defendant Garcia and Defendant Medway are reaping the benefits.

### iii.     Breach of Duty of Loyalty Claims

An agent of a company owes a duty to not "(1) actively exploit their positions within the corporation for their own personal benefits; or (2) hinder the ability of the corporation to conduct the business for which it was developed." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003). "Illinois law recognizes actions for breach of an employee's duty of loyalty and a third party's inducement of a breach of this duty." *Fine Line Distribs. v. Rymer Meats*, 1994 U.S. Dist. LEXIS 8382, at *8 (N.D. Ill. 1994). Employees breach their fiduciary duties when they: fail to inform their employer that they are forming a rival company to directly compete against the employer; use the company's facilities, equipment, or resources to assist them in developing their new business; or solicit fellow employees to join a rival business. *See Foodcomm Int'l*, 328 F.3d at 304; *see also Unichem Corp. v. Gurtler*, 148 Ill. App. 3d 284, 290 (1st Dist. 1986).

Defendant Garcia did not inform Medcor that he was forming a rival company to compete against Medcor after he was terminated and before signing his exit agreement. Robinson Declaration at ¶¶ 27, 33. Defendant Garcia and Defendant Brown used Medcor's

Protected Information, including customer lists and pricing information, to assist in developing new business for Defendant Medway. *Id.* at ¶¶ 28–43. Defendants Brown and Patel diverted Medcor customers to Defendant Garcia and Defendant Medway. *Id.* Defendant Garcia solicited a Medcor contractor, Defendant Patel, to join Defendant Medway. *Id.*; *see also Foodcomm*, 328 F.3d at 304 (upholding injunction based on breach of fiduciary duty where former employees exploited their positions with former employer to create a rival company, using their former employer's resources, and never informed the employer about their rival company).

### iv. Trade Secret Claims

A court may enjoin misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") where: (1) the information is a trade secret used or intended for use in interstate or foreign commerce, and (2) has been, or is threatened to be, misappropriated. 18 U.S.C. § 1836(b)(1), 1836(b)(3)(A). The Illinois Trade Secrets Act ("ITSA") provides for similar relief under the same factors, while additionally requiring a showing that the trade secret was used by the defendant. *See* 765 ILCS 1065/3; *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 817-19 (N.D. Ill. 2014); *Strata Mktg., Inc. v. Murphy*, 317 Ill. App. 3d 1054 (1st Dist. 2000). Their standards are met here.

Medcor's Protected Information is not generally known by the public or easily accessible to those inside or outside the company, fulfilling the DTSA and ITSA "trade secret" definitions. *See* 18 U.S.C. § 1839; 765 ILCS 1065/2(d); Robinson Declaration at ¶ 16. The types of Protected Information at issue here likewise constitute protectable trade secrets. *See, e.g.*, *APC Filtration v. Becker*, 646 F. Supp. 2d 1000, 1010 (N.D. Ill. 2009) (client information, client product preferences, quotes, cost and profit margin constitute trade secrets); *Vendavo*, 397 F. Supp. at 1131–33 (business strategies, marketing strategies, names and addresses of potential

10

customers constitute trade secrets); Robinson Declaration at ¶¶ 13–15. The steps Medcor has taken to safeguard its Protected Information are sufficient to maintain the status of trade secrets. Robinson Declaration at ¶¶ 15–16; *see also RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 874 (N.D. Ill. 2001) (password protections, restricting potential client information and access to certain employees, database protection, and on-site office locks sufficient to maintain the status of a trade secret).

This Court has the power to enjoin both "threatened" and "actual" misappropriation—both are present here. 765 ILCS 1065/3. "A former employee may not use the specific, confidential information [the employee] gained from a former employer to win clients from [the] former employer." *Vendavo*, 397 F. Supp. at 1139. Here, Defendants have used the Protected Information to divert Medcor business to Defendant Medway, and will continue to use such misappropriated Protected Information in their endeavors.

The Seventh Circuit recognizes a cause of action for "inevitable disclosure" of trade secrets. A plaintiff may prove a claim of trade secret misappropriation by demonstrating that a former employee's new business endeavor will inevitably lead him to rely on the former employer's trade secrets. *Id.* at 1140. The Seventh Circuit employs a three-factor analysis to evaluate whether a defendant will "inevitably disclose" trade secrets in their new position: (1) level of competition between the former employer and new employer; (2) whether the employee's position with the new employer is comparable to the position he held with the former employer; and (3) the actions the new employer has taken to prevent the former employee from using or disclosing trade secrets of the former employer. *See Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, 2020 U.S. Dist. LEXIS 122347, at *38 (N.D. Ill. July 13, 2020) (citing *Packaging Corp. of America, Inc. v. Croner*, 419 F. Supp. 3d 1059, 1070 (N.D. Ill. 2020)).

11

Inevitable disclosure has been found when employees agreed to a non-compete for a fixed period, and could not operate their new endeavor without plaintiff's trade secrets. *See Strata Mktg., Inc*, 317 Ill. App. 3d at 1071.

Defendant Medway offers the same services as Medcor, and offers such services to Medcor clients. Robinson Declaration at ¶¶ 28, 34, 47. Defendant Garcia's position as a founder of Defendant Medway is at least comparable to the position he held at Medcor, and in his new role he is soliciting and attempting to work with the same clients he serviced at Medcor and about whom he has confidential information. *Id.* Indeed, as to Production Company C, Medway solicited and is actually working with the same client Garcia serviced at Medcor and about whom Garcia unquestionably has confidential Medcor information. *Id.* Defendant Garcia directs Defendant Medway's activities, so there have clearly been no actions by the "new employer" to prevent any disclosure of trade secrets, and in fact, such disclosure was encouraged in the solicitation of Medcor clients. *Id.* Defendants' attempted misappropriation, actual misappropriation, and use of Medcor's Protected Information gives Defendants an unfair advantage, as Defendants now can avoid the costly and lengthy process of learning this information on their own, and will be able to solicit Medcor clients and prospective clients using the same through inevitable disclosure. *See Vendavo*, 397 F. Supp. 3d at 1142; Robinson Declaration at ¶¶ 54. Medcor has been harmed and will continue to be irreparably harmed without immediate intervention from this Court.

      iv.    **Trademark and Unfair Competition Claims**

To succeed on its claims of federal and common law trademark infringement, Medcor must show: (1) its trademarks are protectable; and (2) the Defendants use is likely to cause confusion. *See Poneman v. Nike, Inc.*, 161 F. Supp. 3d 619, 626 (N.D. Ill. 2016). Federal and

common law unfair competition is analyzed under the same factors. *See Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) (claims of trademark infringement under 15 U.S.C. § 1114 involves analysis of the same elements for unfair competition claims under 15 U.S.C. § 1125 and Illinois common law).

In connection with its business, Medcor has extensively used, and continues to use, the trademark MEDCOR alone and in connection with other words and designs (collectively referred to as the "MEDCOR Marks"). Medcor has established strong common law rights in the MEDCOR Marks. In addition to common law rights, Medcor is the owner to all right, title, and interest of the U.S. Federal Trademark registrations covering the MEDCOR Marks, including U.S. Registration Numbers 2,899,993 and 3,173,331. These registrations constitute conclusive evidence of the validity of the marks and registrations, Medcor's ownership of the marks, and its exclusive right to use them.

In this Circuit, a likelihood of confusion is analyzed under the following factors: (1) the similarity between the marks in appearance and suggestion; (2) the similarity in the goods or services offered; (3) the area and manner of concurrent use; (4) the degree of consumer care likely to be exercised with the goods and services; (5) the strength of the plaintiff's marks; (6) proof of actual confusion; (7) the intent of the defendant to palm off their goods and services as those of another. *See Autozone*, 543 F.3d at 929. While, no one factor is dispositive, particular consideration is given to the similarity of the marks, any actual confusion, and the intent of the defendant. *Id*. Here, MEDCOR and MEDWAY are unmistakably similar in appearance and sound, and are used in connection with identical services offered to the same customers through the same channels of trade. Robinson Declaration at ¶ 57. Moreover, Defendant Garcia founded Defendant Medway purposefully to interfere with Medcor's business, and to trade off of

13

Medcor's goodwill and reputation in the industry. *Id.* at ¶ 50. Defendant Garcia's selection of a confusingly similar trademark was no accident, was made in bad faith, and is already causing confusion in the marketplace. *Id.* at ¶ 57–59. Medcor will likely succeed on its claims of trademark infringement and unfair competition.

### D. The Balance of Hardships Weighs in Favor of Medcor

Medcor has suffered irreparable harm, and will continue to suffer such harm if Defendants are not restrained and enjoined. The Court considers whether there exists any harm to the Defendants that outweighs the irreparable damage being done to Medcor's business. *See Gateway E. Ry. v. Terminal R.R. Ass'n*, 35 F.3d 1134, 1140 (7th Cir. 1994). A balance of harms in a trade secrets case will favor injunctive relief if there is no harm to former employees in returning confidential information and enjoining them from soliciting a former employer's clients. *See Aon Risk Servs. Cos.*, 415 F. Supp. 3d at 850. Additionally, an injunction directed to the use of a confusingly similar trademark serves the public interest by preventing consumer confusion in the marketplace and maintaining quality control. *See Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1091–92 (7th Cir. 1988).

Here, Defendants already have agreed not to do those very actions for which Medcor seeks injunctive relief: to refrain from soliciting Medcor's clients and sharing Medcor's trade secrets, and to refrain from competing with Medcor for a reasonable period of six months. Robinson Declaration at ¶¶ 23–28. The only potential harm to the Defendants is that they would be enjoined from breaching their contractual obligations, misappropriating Medcor's trade secrets, and stealing Medcor's current and potential clients while using a confusingly similar trademark. Any alleged economic harm to the Defendants is illusory, since the entire value of their business endeavor under Defendant Medway is based on the misappropriation and use of

Medcor's Protected Information. The public interest is served by upholding the sanctity of contracts, and preventing Defendants from reaping the benefits of their tortious conduct—including their breaches of contract, misappropriations of trade secrets, breaches of loyalty, trademark infringement, and other unlawful behavior.

## III. CONCLUSION

For the reasons aforementioned, Medcor requests that this Court grant its Motion for a Temporary Restraining Order and Preliminary Injunction, as well as any other equitable and legal relief that the Court deems proper, and set a schedule to consider a permanent injunction.

Dated: May 10, 2021

Respectfully submitted,

By: /s/Dalton K. Hughes
William H. Frankel
wfrankel@brinksgilson.com
Virginia W. Marino
vmarino@brinksgilson.com
Dalton K. Hughes
dhughes@brinksgilson.com
**BRINKS GILSON & LIONE**
NBC Tower, Suite 3600
455 N. Cityfront Plaza Drive
Chicago, IL 60611 Telephone:
(312) 321-4200

*Attorneys for Plaintiff*
*MEDCOR, Inc.*

Anthony W. Mattivi
Anthony.Mattivi@medcor.com
MEDCOR, Inc.
4805 Prime Parkway
P.O. Box 550
McHenry, IL 60050
Telephone: (815) 363-9500

*Of Counsel for Plaintiff*
*MEDCOR, Inc.*

15